IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MARK HARRY McCLENDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:02-CV-0218 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION
### TO REVERSE THE DECISION OF THE COMMISSIONER
### AND REMAND FOR FURTHER ADMINISTRATIVE ACTION

Plaintiff MARK HARRY McCLENDON brings this cause of action pursuant to 42 U.S.C. §

405(g), seeking review of a final decision of defendant JO ANNE B. BARNHART, Commissioner

of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits

and supplemental security income (SSI).  Both parties have filed briefs in this cause.  For the

reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the

Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED

and the case be remanded for further administrative action consistent with this Report and

Recommendation.

I.
PROCEEDINGS

On August 10, 1991, plaintiff was involved in an automobile accident which resulted in a

head injury and significant orthopedic injuries to plaintiff's right lower extremity.  Plaintiff was

granted a period of disability effective August 10, 1991.  In 1993, plaintiff returned to work at a "desk job" until 1995.  (Tr. 92).  In September 1996, plaintiff began work as a janitor, but stopped working in April 1997 because of pain in his back, hip, and right leg which required an increase in the amount of pain medication taken daily.  (Tr. 92-93).  Plaintiff's benefits were terminated in August 1998.

Plaintiff reapplied for disability benefits and SSI on August 6, 1999, alleging he again became unable to work because of a disabling condition on June 1, 1995.  (Tr. 85-87; 223-25). Plaintiff described his disabling condition as severe pain in his lower back, right hip, right knee and right ankle due to his 1991 right lower extremity injury, short term memory problems due to his 1991 head injury, and panic attacks.  (Tr. 92).  In describing how his condition limited his ability to work, plaintiff stated, "Cannot bend, squat, stand for long periods of time, cannot lift or carry objects more than 25 lbs. without severe pain or injury."  Plaintiff noted he completed the 12th grade, and identified past work as a janitor (September 1996 -April 1997), a "QA technician" (1993-1995), a shipping and recruiting clerk (1986 - August 1991), and a test technician (1982 - 1986).  (Tr. 93).  At the time he filed the instant applications for benefits, plaintiff was 40-years-old. (Tr. 85).

On January 25, 2000, Dr. Margaret Meyer completed a Psychiatric Review Technique form evaluating plaintiff's allegations of work disability due to panic attacks and anxiety.  (Tr. 194-202). Although Dr. Meyer determined plaintiff's affective disorders and anxiety related disorders were not severe impairments, Dr. Meyer also noted that plaintiff cried frequently during the evaluation and demonstrated impaired memory for recent events.  Dr. Meyer then diagnosed plaintiff with major depression, recurrent, moderate to severe, but further opined plaintiff's allegations of disability due to a mental condition were only partially credible and were "not fully supported,"

noting plaintiff can independently pay bills, shop, make change, and that there was no observed difficulties with concentrating, understanding or coherency.  (Tr. 195).  Dr. Meyer concluded plaintiff's mental impairments cause only a slight degree of limitation with regard to restriction of activities of daily living and difficulties in maintaining social functioning, seldom cause deficiencies of concentration, persistence or pace, and never cause episodes of deterioration or decompensation in work or work-like settings.  (Tr. 201).  A Residual Functional Capacity Assessment form was also completed wherein plaintiff was found to have only occasional postural limitations and moderate exertional limitations.  (Tr. 203-09).  On January 28, 2000, the Social Security Administration denied plaintiff benefits determining plaintiff's condition was not severe enough to keep him from working.[1]  (Tr. 62; 64-70; 226-31).  On April 17, 2000, the Administration denied plaintiff benefits upon reconsideration.  (Tr. 63; 73-76; 234-37).[2]

On October 18, 2000, an Administrative Law Judge ("ALJ") conducted an administrative hearing in this case.[3]  (Tr. 27-61).  On December 20, 2000, the ALJ rendered an unfavorable decision, finding plaintiff was not disabled at any time through the date of the decision.  (Tr. 12-20).

---

[1]The Administration found plaintiff's condition was not severe enough to keep him from working.  The Administration explained, "You said you were disabled because of anxiety attacks and depression.  These may require special care and treatment.  You also said you were disable because of chronic pain in his right hip, knee and ankle, and migraines.  However, you current symptoms are not severe enough to be considered disabling under Social Security guidelines.  Although you said you have multiple limitations, the evidence does not show that your ability to perform basic work activities is as limited as you indicated.  Your overall medical condition may cause some restrictions.  However, based on your description of your past job as a janitor, this condition does not prevent you from performing that work."  (Tr. 70)

[2]The Administration found plaintiff's condition was not severe enough to keep him from working.  The Administration explained, "You said you were disabled because of chronic pain in right hip, knee, ankle and migraines.  However, your current symptoms are not severe enough to be considered disabling under Social Security guidelines.  You also said you were disabled because of panic attacks and depression.  This has not seriously affected your ability to understand, remember or be around other people.  You have described various limitations caused by your symptoms and the evidence does show you have these limitations.  Your overall medical condition may cause some restrictions.  However, based on your description of your past job as a janitor, this condition does not prevent you from performing that work.  (Tr. 76; 237).

[3]In his request for an administrative hearing, plaintiff advised he could no longer do the jobs he was trained to do "due to severe limitations from motor vehicle accident,"alleging he cannot bend, lift, squat, or stand for extended periods of time due to his injuries.  (Tr. 78).

The ALJ determined plaintiff has the medically determinable impairments of "fractures of lower limbs" and "affective mood disorders" that are considered "severe" within the meaning of the Regulations.  (Tr. 16).  The ALJ further found, however, that plaintiff's impairments were  "not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4."  The ALJ noted plaintiff continues to have significant problems with his right knee and ankle, has to use a cane for ambulation, and experiences significant discomfort and swelling when walking for any significant period of time.  The ALJ acknowledged plaintiff had "attempted to return to work in various categories" but that such work attempts had been unsuccessful.  (Tr. 17).  Citing to portions of plaintiff's medical record, the ALJ surmised that plaintiff's depression, while making it hard for him to maintain a stable job, should improve with further treatment, that plaintiff's migraine headaches are reasonably well controlled, that his anxiety/panic attacks are adequately controlled and do not appear to significantly limit plaintiff's ability to work, and that plaintiff's right leg impairments, although severely limiting plaintiff's ability to walk and stand, do not prohibit plaintiff from sitting if he has a chair to accommodate the limited range of motion of the right leg and knee.  The ALJ concluded plaintiff retains the residual functional capacity (RFC) for sedentary work if accommodations are made for stabilizing the right knee while sitting.  Based on this RFC, the ALJ found plaintiff could not return to work he had performed in the past which required extensive standing and walking.  (Tr. 18).  After eliciting vocational expert testimony, the ALJ determined that there are other jobs existing in significant numbers in the regional and national economy which plaintiff could perform with his RFC, age, and education, *viz.*, a service representative, a diet clerk, and a taxi cab dispatcher.  (Tr. 19).  The ALJ thus concluded that plaintiff was not under a disability at any time through the date of his decision, December 20, 2000.  (Tr. 20).

On January 18, 2001, plaintiff appointed an attorney to represent him in connection with the appeal of his claims.  (Tr. 11).  On September 19, 2001, plaintiff's attorney submitted correspondence to the Appeals Council arguing plaintiff's right leg impairment met a listing under the then-existing section 1.03B, and that the ALJ's finding that plaintiff has no work-related limitation of function due to mental impairments was insupportable.  (Tr. 238-40).

Upon the Appeals Council's denial of plaintiff's request for review on June 5, 2002, the ALJ's determination that plaintiff is not under a disability became the final decision of the Commissioner.  (Tr. 5-6).  Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## ISSUES

Plaintiff presents the following grounds for review:

1.    Plaintiff did not validly waive representation and was prejudiced by the lack of representation;

2.    The ALJ's finding as to plaintiff's residual functional capacity (RFC):

    a.    is not supported by substantial evidence because the RFC does not include any mental limitations; and

    b.    is inconsistent with the ALJ's finding that plaintiff's affective mood disorders are severe at Step 2 of the sequential evaluation.

3.    The ALJ's finding that plaintiff had no impairment or combination of impairments which meet or equal a Listing is not supported by substantial evidence; and

4.    The ALJ failed to consider (a) the combined effect of plaintiff's impairments, and (b) the issue of whether plaintiff can maintain employment.

III.
FINDINGS AND CONCLUSIONS

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis.  Therefore, this Court is limited to reviewing whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision.

A.  Waiver of Representation

In his first ground, plaintiff argues he did not validly waive representation at the hearing before the ALJ.  Citing a 1997 case out of the Eastern District of Texas, *Gullett v. Chater*, 973 F. Supp. 614 (E.D. Tex. 1997), plaintiff contends that "[i]n order for a waiver of representation to be valid, the ALJ must (in addition to any written notices sent to the claimant) orally notify the claimant of the following:  (1) the manner in which a representative can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on a representative's fee . . . and the requirement for prior administrative approval of any fee."  Plaintiff argues the ALJ did not orally notify him of <u>any</u> of these items.  Plaintiff further argues the written notices he received before the hearing "said nothing about how a representative could aid in the proceedings, or about the limitation on a representative's fee."  Plaintiff thus concludes he did not validly waive representation.

Plaintiff further argues he was prejudiced by the lack of representation because he can show a representative could and would have adduced evidence that might have changed the outcome of the hearing.  Specifically, plaintiff contends, at a minimum, a representative could and would have:

1.      cross-examined the VE and elicited his testimony as to the vocational effect

of the limitations noted by one of plaintiff's psychiatric examiners, to wit: emotional lability, tendency to cry easily, and significantly impaired memory for recent facts, and as to the vocational significance of:

a.      plaintiff's GAF rating of 50; and

b.      the examiner's opinion that plaintiff could not manage benefits in his own interest.  Plaintiff notes neither he nor the ALJ cross-examined the VE as to any of these matters.

2.      adduced testimony from plaintiff as to how long it took him to rise from a sitting position, use the restroom, and return to his original sitting position, and would have cross-examined the VE about the vocational effect of absences from a work station every two (2) hours for the length of time required for plaintiff to use the restroom; and

3.      inquired of plaintiff as to how far he could walk "at a reasonable pace on rough or uneven surfaces," a criteria for certain listings in effect at the time of the Appeals Council's decision, but not in effect at the time of the hearing before the ALJ or at the time of the ALJ's decision.

Plaintiff argues a representative could and would have adduced evidence which might have changed the ALJ's decision and, therefore, plaintiff was prejudiced by the lack of representation.

In his reply, defendant argues plaintiff was informed in a manner consistent with the requirements of the regulations of his right to representation in the administrative review process, but that plaintiff chose, instead, not to obtain representation prior to the denial of benefits after the ALJ hearing.  Defendant first notes the notice set forth in the original written denial of plaintiff's application for disability benefits:

IF YOU WANT HELP WITH YOUR APPEAL

You can have a friend, lawyer, or someone else help you.  There are groups that can help you find a lawyer or give you free legal services if you qualify.  There are also lawyers who do not charge unless you win your appeal.  Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know.  If you hire someone, we must approve the fee before he or she can collect it.  And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward

the fee.  We do not withhold money from SSI benefits to pay your lawyer.

(Tr. 65).  Defendant notes that, nonetheless, in his "Request for Reconsideration," plaintiff

indicated he would continue to represent himself.  The letter denying plaintiff disability benefits on

reconsideration also contained the above notification on the first page.

The "Request for Hearing by Administrative Law Judge" form plaintiff completed also

contained a similar notification:

> You have a right to be represented at the hearing.  If you are not represented but
> would like to be, your Social Security Office will give you a list of legal referral and
> service organizations.

(Tr. 78).  The letter acknowledging receipt of plaintiff's request for a hearing contained the

following notice:

> **Your Right To Representation**
>
> You may choose to be represented by a lawyer or other person.  A representative can
> help you get evidence, prepare for the hearing, and present your case at the hearing.
> If you decide to have a representative, you should find one immediately so that he or
> she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits.  Some organizations
> may be able to represent you free of charge.  Your representative may not charge or
> receive any fee unless we approve it.
>
> We have enclosed the leaflet "Social Security and Your Right to Representation."
> We are also enclosing a list of groups that can help you find a representative.

(Tr. 80).  Defendant thus concludes plaintiff had notice well before the date of the ALJ hearing that

legal representation might be available to him free of charge and that a private attorney could be paid

from past due benefits.

Defendant also notes the following exchange at the hearing between plaintiff and the ALJ:

> ALJ:    Good morning Mr. McClendon, I'm Judge Conner; I'll be hearing
> your case this morning.  Mr. McClendon, you were advised in several
> different documents, that if you choose, you could have an attorney or
> another person of your choice, this [inaudible] at the, at this hearing

|       | morning.  It is not mandatory; I just want to make sure that you were aware of your right to do so if you choose.  Do you recall reading that in the various documents that have been sent you? |
|-------|-------|
| CLMT: | Yes. |
| ALJ:  | Yes, you – |
| CLMT: | About the attorney? |
| ALJ:  | If you choose, you could have an attorney to assist you at this hearing. |
| CLMT: | Right, I didn't feel that I really needed an attorney. |
| ALJ:  | Okay, that's, that's your prerogative.  It isn't necessary to have one or not.  If you're comfortable proceeding we can do so.  Do you feel comfortable? |
| CLMT: | Yes ma'am. |
| ALJ:  | Okay, we will proceed. |
| CLMT: | A little nervous, but I'm comfortable. |
| ALJ:  | Well that's all right. |
| CLMT: | I'm as comfortable as I can be I guess. |

Defendant also contends plaintiff's reliance on *Gullett* is misplaced because, unlike the situation in *Gullett*, there is evidence in this case that plaintiff received multiple written notifications about representation <u>and</u> the ALJ specifically inquired about the notification.  Defendant argues this case is more akin to *Castillo v. Barnhart*, 325 F.3d 550 (5th Cir.  2003) and cites the Court to that case as authority that adequate written notices <u>and</u> the ALJ's reminder at the hearing about the right to representation adequately informs a claimant of the right to representation and, thus, any failure of the ALJ in this case to recite, point by point, all of the information required by *Gullett* is not reversible error.

Defendant also asserts plaintiff has not demonstrated that the lack of representation

prejudiced his case in that the objective medical evidence did not establish that plaintiff has a

prostrate problem and, even if the evidence did establish such an impairment, that the ALJ made

adequate inquiries into the necessity of plaintiff making frequent trips to the restroom.  Defendant

also maintains plaintiff's argument that he was prejudiced by the lack of counsel because counsel

would have cross-examined the VE as to any effects of an impaired memory, a GAF of 50, and an

examiner's opinion that plaintiff could not manage benefits in his own interest is without merit.

Specifically, defendant contends such isolated clinical findings in a report are not the same as an

RFC assessment and, thus, a hypothetical question including such factors would not have been

proper because they would not have been in the form of functional limitations.  Defendant also

argues an inquiry by counsel as to how far plaintiff could walk "at a reasonable pace on rough or

uneven surfaces" would not have changed the outcome of the hearing because the ability to walk on

rough or uneven surfaces was merely an example of ineffective ambulation, and the ALJ considered

plaintiff's use of the cane when determining the effectiveness of plaintiff's ability to walk.

Defendant thus concludes plaintiff has not demonstrated prejudice.

       In his reply, plaintiff continues to maintain he did not receive adequate notice concerning his

right to counsel because:

1.     None of the written notices provided to plaintiff prior to the hearing before the ALJ stated that a representative's fee was limited to the lesser of 25% of any past-due benefits or $5,300.00, nor did the ALJ orally inform plaintiff of this fee cap; and

2.     One of the written notices stated that the Administration would withhold up to 25% of any past due benefits to pay toward the fee, but such notice did not notify plaintiff of the fee cap and, in fact, implied that the fee could exceed 25%.

Plaintiff argues that, notwithstanding the apparently similar notices in *Castillo*, the written notices

in this case did not inform plaintiff that any limitation existed as to how much a representative

could charge and, thus, failed to adequately inform plaintiff concerning his right to representation. Plaintiff continues to argue that *Gullet* controls this case and requires that written notices <u>and</u> oral information from the ALJ are required.  Plaintiff also asserts a new argument that, considering the fact that one of plaintiff's psychiatric examiners opined that plaintiff could not manage benefit payments in his own interest (an issue not present in *Castillo*), this Court should look with increased caution at the issue of whether plaintiff knowingly and intelligently waived assistance of counsel.

The undersigned finds *Castillo,* the Fifth Circuit case, is controlling rather than the *Gullett* case, a federal district court case.  In *Castillo*, the record included four (4) separate notices sent to Castillo that advised her of her right to representation by an attorney.  They informed her of the type of assistance an attorney could provide to her during the hearing, that there was a possibility she could qualify for free representation, that she could also acquire counsel who would only receive compensation if she prevailed, and that the Social Security office would withhold a maximum of 25% of her past due benefits to pay toward the attorney's fee.  Additionally, one such notice included a two-page list of organizations Castillo could contact to obtain free representation.

At the administrative hearing, the ALJ reminded Castillo that she had been sent at least two notices that advised her she had a right to be represented by an attorney.  The ALJ then confirmed that, despite these notices, "[Y]ou're appearing without counsel, is that right?" Castillo responded, "Right."  He continued, "You're going to represent yourself?  You and your husband?"  Castillo answered, "Right."  The Fifth Circuit found the written notices, together with the reminder to Castillo at the hearing of her right to counsel, sufficiently informed her of her right to an attorney, and that she validly consented to proceed without representation.

Here, plaintiff, who had completed high school,[4] received several written notices advising him of the right to representation.  Plaintiff was specifically advised there were groups that could help him find a lawyer or give him free legal services, that there were lawyers who would not charge him a fee unless he won his appeal and received benefits, that some organizations could represent him free of charge, and that his local Social Security office had a list of legal referral and service organizations or groups that could help with his appeal.  Plaintiff was advised that if he hired someone to represent him, the representative could not charge or receive any fee unless the Social Security Administration approved the fee, that the Administration would withhold up to 25 percent of any past due Social Security benefits to pay toward the fee, but that the Administration would not withhold money from SSI benefits to pay a representative.  Plaintiff was further advised that a representative could help him get evidence, prepare for the hearing, and present his case at the hearing.  Plaintiff was also provided with an explanatory leaflet concerning his right to representation, and a written list of groups that could help plaintiff find a representative.

The ALJ, prior to receiving evidence at the hearing, reiterated that plaintiff, who appeared with his fiancé, had a right to have an attorney assist at the hearing.  Under these circumstances, plaintiff, just as the claimant in *Castillo*, validly waived his right to representation.  *See also Swain ex rel. Lewis v. Barnhart*, 78 Fed.Appx. 341, 341 (5th Cir. Oct 15, 2003) (claimant who was provided three written notices advising him of his right to representation and was advised by the ALJ at the hearing of that right as well validly waived his right to representation).  Since plaintiff validly waived his right to representation, the issue of prejudice need not be addressed in this Report and

---

[4]The plaintiff in *Gullett* had only a 9th grade education, and the plaintiff in *Clark v. Schweiker*, 652 F.2d 399 (5th Cir. 1981) had only a 7th grade education.

Recommendation.[5]

## B.  Mental RFC

The first medical records addressing any depression experienced by plaintiff are six (6)

pages of notes from Dr. B.E. Wilkenfeld, a psychiatrist, which are almost totally illegible.  (Tr. 173-

78).  The records do reveal plaintiff was seen for about a year (January 16, 1996, May 16, 1996,

May 23, 1996, August 27, 1996, and January 31, 1997), and received prescriptions of Tranxene,[6]

Doxepin,[7] and Zoloft [8] for the months of August, September and November.  On the May 16, 1996

examination, his second visit to Dr. Wilkenfeld, the record (the only legible record) indicated

plaintiff's wife was having an affair and wanted a divorce, that plaintiff had a good response to his

medications (Doxepin and Xanax[9]), but that plaintiff had stopped both medications approximately

one (1) month prior to the appointment and had suffered a relapse with depression, panic attacks,

and suicidal thoughts but no intent.  (Tr. 176).

On June 10, 1999, plaintiff presented to Dr. Michael G. Ryan, a neurologist, for a

consultative exam.  (Tr. 192).  In an evaluative report to Dr. Donald Blackketter, dated June 11,

1999, Dr. Ryan advised plaintiff was taking Xanax for panic attacks and that no formal mental

status was done.  (Tr. 192).  Even though no mental status was done, plaintiff did return to Dr. Ryan

---

[5]Plaintiff presents several matters as to which it appears representation would have been beneficial.  If remand is ordered, those areas can be addressed by plaintiff's counsel and remand will cure any possibility that plaintiff's mental condition invalidated his waiver of counsel.

[6]An anti-anxiety agent used primarily for relief of anxiety.

[7]An anti-depressant used to treat depression and anxiety.

[8]A medicine for the treatment of depression and anxiety.

[9]An anti-anxiety agent used primarily for short term relief of mild to moderate anxiety and nervous tension.

on August 17, 1999.  Dr. Ryan determined the Xanax alleviated the panic attacks, and also found depression was not a problem.  In a follow-up of November 16, 1999, Dr. Ryan found the Xanax helps with the panic difficulties.  No mention of depression was made.

On October 12, 1999, two (2) months later, plaintiff presented to Dr. Son Vi Nguyen.  In his examination of plaintiff, Dr. Nguyen noted plaintiff seemed to be very emotional, bursting into tears and crying profusely when talking about his problems.  Dr. Nguyen noted plaintiff was alert and oriented to all spheres, answered all of the questions in a coherent and relevant manner, and that his thought processes were goal oriented.  Dr. Nguyen found plaintiff's affect was appropriate, but that his mood was labile[10] and depressed.  Dr. Nguyen found that, overall, plaintiff's memory was significantly impaired for recent facts, noting his inability to remember any past presidents, his inability to repeat four digits backward, and his inability to repeat three names after ten minutes.  The doctor noted plaintiff had poor abstraction ability, average intellectual functioning, and lacked delusions, hallucinations or suicidal thought.  As his initial psychiatric diagnostic impression, Dr. Nguyen indicated "Major Depression, recurrent, moderate to severe" and "History of Panic Disorder."  Dr. Nguyen also indicated a GAF of 50 for plaintiff.[11]  As his prognosis, Dr. Nguyen stated, "The prognosis for his emotional lability and panic disorder depends on the adequacy of the treatment he receives."  Dr. Nguyen recommended that plaintiff "be evaluated by an orthopedist or a neurologist to determine how much his physical condition interferes with his capacity to maintain a stable job."  Dr. Nguyen noted plaintiff "still appears to be very depressed and still has panic attacks, which make it hard for him to maintain a stable job, but his depression and panic attacks

---

[10]In psychiatry, labile denotes free and uncontrolled moods or behaviors expressing emotions.  *Webster's New World Medical Dictionary*, 2nd Edition (January 2003).

[11]A GAF rating of 50 indicates "serious impairment in social or occupational functioning."

have a chance to improve with treatment."  On the form required by the Texas Rehabilitation Commission, the referring agency, Dr. Nguyen indicated he believed plaintiff understood the meaning of filing for benefits, but that, in his opinion, plaintiff was not able to manage benefit payments in his own interest "at this time."  (Tr. 188).

On January 25, 2000, Dr. Meyer, as a consultative physician, evaluated plaintiff's allegations of work disability due to panic attacks and anxiety.  (Tr. 194-202).  The ALJ did not reference Dr. Meyer's evaulation.  Upon review, Dr. Meyer's findings do not appear to be consistent.  She diagnosed plaintiff with major depressive disorder, recurrent, moderate to severe, but further opined plaintiff's allegations of disability due to a mental condition were only partially credible and were "not fully supported."  Then, after diagnosing a moderate to severe disorder, Dr. Meyer determined plaintiff's affective disorders and anxiety related disorders were not severe impairments, and would not restrict plaintiff's daily activities or work.  (Tr. 201).

On April 5, 2000, plaintiff presented to Dr. Craig Shaffer for an internal medicine consultative examination.  (Tr. 210-13; 222).  Dr. Shaffer did not make any findings of depression, and noted that while plaintiff described getting nervous and having some memory loss, and even occasionally described suicidal thoughts, that plaintiff "does not have any clear cut psychiatric history."

 At the hearing before the ALJ on October 18, 2000, plaintiff testified that he experiences panic attacks, but that he controls his panic attacks with medication.  (Tr. 45, 49).  Plaintiff testified that if he drives in heavy traffic he has panic attacks.  (Tr. 46).

In his December 20, 2000 decision, the ALJ found "[t]he medical evidence indicates that

[plaintiff] has . . . affective mood disorders, impairments that are severe within the meaning of the

Regulations . . . ."  The ALJ noted that reactive to his multiple physical impairments, plaintiff became anxious and depressed.  The ALJ referenced Dr. Nguyen's evaluation, noting the diagnosis of recurrent major depression and a history of a panic disorder, but characterizing Dr. Nguyen's findings as a determination that plaintiff's "mental problems would make it hard for him to maintain a stable job but that with further treatment they [plaintiff's mental impairments] *should improve*."  In making this statement, the ALJ was apparently relying on Dr. Nguyen's recommendation that plaintiff's "depression and panic attacks *have a chance to improve* with treatment."  The ALJ found plaintiff's anxiety/panic attacks appeared to not be significantly limiting as to plaintiff's ability to work, and noted plaintiff admitted that his anxiety disorder was adequately controlled by medication.  In determining plaintiff's RFC, the ALJ did not find plaintiff had any mental limitations or that his affective mood disorders would limit or interfere with his ability to work.  In his "Findings," the ALJ found plaintiff has an impairment or combination of impairments considered "severe," but did not identify such impairment or combination of impairments.

Plaintiff argues the ALJ's finding that plaintiff's affective mood disorders were "severe" impairments is inconsistent with his implied RFC finding that plaintiff's mental impairments do not interfere with his ability to work.  Plaintiff notes the Administration's regulations define an impairment as "severe" only "if it significantly limits an individual's physical or mental ability to do basic work activities."  Plaintiff maintains the ALJ's finding that his affective mood disorders were severe necessarily constitutes a finding that such disorders significantly limited plaintiff's ability to do basic work activities, and is thus inconsistent with his RFC finding and resulting hypothetical to the VE that included no mental limitations.  Plaintiff concludes that as these findings are contradictory, the ALJ's RFC finding is not supportable.

Defendant argues substantial evidence supports the ALJ's determination that plaintiff's affective mood disorders, although "severe," did not result in additional "functional limitations" for purposes of his RFC finding.  Defendant maintains an RFC assesses the effect any functional limitations resulting from a claimant's medically determinable impairments may have on the claimant's "work setting" capabilities.  Defendant contends the ALJ's conclusion that plaintiff's affective mood disorders were severe, but did not result in additional functional limitations affecting plaintiff's  work setting capabilities, did not constitute an inconsistency between the severity finding and the RFC finding.

Plaintiff argues the ALJ's finding that plaintiff's mental limitations did not limit his RFC was not supported by substantial evidence.  Plaintiff primarily relies on the October 12, 1999 psychiatric evaluation of plaintiff by Dr. Nguyen, as well as plaintiff's testimony at the ALJ hearing, as evidence of various mental limitations plaintiff suffers which would limit his RFC.  (Tr. 185-87).  Plaintiff also argues the ALJ's failure to reference plaintiff's psychiatric treatment by Dr. Wilkenfeld in 1996 indicates the ALJ completely ignored this period of psychiatric treatment of plaintiff.  Plaintiff further notes that although the ALJ correctly found plaintiff's anxiety attacks were "under control" (per plaintiff's testimony and a general practitioner's assessment), this finding had no bearing on the issue of whether plaintiff's recurrent major depressive disorder (his primary psychiatric impairment diagnosed by Dr. Nguyen) imposed any functional limitations on him. Plaintiff concludes the ALJ's RFC finding, with its implicit finding that plaintiff has no mental limitations affecting his ability to work, is not supported by substantial evidence.  The nub of plaintiff's argument appears to be that the ALJ, based on the medical evidence of record and plaintiff's testimony, should have found plaintiff's RFC was limited by his depression (resulting in forgetfulness and an inability to make rational decisions) which was derived from Dr. Nguyen's

determination that plaintiff could not manage benefit payments as of October 12, 1999.

Defendant argues the ALJ did not misstate a doctor's prognosis when all the evidence from plaintiff's other physicians is considered.  Defendant maintains the medical records, in addition to plaintiff's testimony, show plaintiff's anxiety and depression are stable or controlled when plaintiff takes his medications and, thus, such mental impairments do not result in additional functional limitations.  Defendant argues that since plaintiff's conditions are responsive to medications, Dr. Nguyen's diagnosis was not controlling and did not establish that plaintiff's mental impairments cause additional non-exertional functional limitations in a work setting.  Defendant concludes that when plaintiff takes his medications, he has the basic mental capacity to work.

In his reply, plaintiff contends he testified only that his anxiety attacks were controlled by medication, and at no point did he testify, nor was he questioned, concerning his major depressive disorder – Dr. Nguyen's primary diagnosis for plaintiff.  Plaintiff also argues the ALJ was not at liberty to reject Dr. Nguyen's opinions simply because subsequent examinations of plaintiff by a neurologist and a family practitioner found no mental limitations of depression.  Plaintiff contends, in fact, that to the extent there is a conflict between the opinions of the doctors, Dr. Nguyen's opinion should have been given the greater weight as the neurologist's expertise was limited to neurology and the other examiner's expertise was family practice rather than psychology.  Plaintiff also maintains the ALJ's failure to reference Dr. Wilkenfeld's notes implies the ALJ failed to consider the record generated from this period of plaintiff's treatment, *viz.*, that plaintiff's mental impairment persisted despite treatment with medication from January 1996 to January 1997.  Plaintiff argues the record from this period casts considerable doubt on the ALJ's determination that "with further treatment they [plaintiff's psychiatric difficulties] *should improve*."

Plaintiff prevails on this issue for at least two reasons.  First, the ALJ clearly did not reject

or discredit the findings of Dr. Nguyen.  Instead, the ALJ recognized the psychiatric exam by Dr. Nguyen was a comprehensive psychiatric exam (Tr. 18).  At the very least, Dr. Nguyen's findings establish a mental impairment sufficient to constitute a non-exertional impairment which should have been included in the hypothetical to the VE.

Secondly, the ALJ's finding that plaintiff's affective mood disorders were "severe" at Step Two constituted a determination that the mental impairment was significant enough to affect plaintiff's RFC to some degree.  Plaintiff's contention on this point is supported by *Vincent v. Apfel*, 264 F.3d 767 (8th Cir. 2001).  The court in *Vincent* held that the ALJ in that case should have called a VE to testify as to how Vincent's schizophrenia affected his RFC, *given the ALJ's finding that the impairment was severe. Id.* at 769-70.  The *Vincent* court cited *Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989) and *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), as support for the rationale that a severe mental impairment should be considered by a VE in determining its impact upon a plaintiff's RFC.[12]  Further, in an unpublished opinion, *Hearne v. Barnhart*, 111 Fed. Appx. 256 (5th Cir. 2004), the court, citing *Loza v. Apfel*, 219 F.3d 378, 398-99 (5th Cir. 2000), held that a determination of depression at Step Two as "severe" precluded use of the grid at Step Five.  *Loza*, also involved a mental impairment, but involved a finding of non-severe.  In deciding *Loza*, the Fifth Circuit reversed and remanded on the non-severe findings, but also held that if, on remand, *the mental impairment were found to be severe, then use of the grid would be error.*  Similarly, if the mental impairment in this case is severe, then its affect on plaintiff's RFC must be included in the hypothetical to the VE and the failure to include it in the hypothetical is error requiring reversal.

C.

---

[12]It is acknowledged a VE testified in this case.  The VE was not, however, apprised, in the hypothetical, of plaintiff's mental impairment.

Listing

Plaintiff argues the Appeals Council, at the time of its denial of plaintiff's request for review of the ALJ decision, should have found plaintiff's medically determinable impairments met or medically equaled the listed impairment set forth in Listing 1.03.  Plaintiff does not argue he met the listing as it, and any supporting explanatory provisions, read at the time of the ALJ's decision.[13] Instead, plaintiff argues he met the listing, modified on February 19, 2002, that was in effect at the time of the Appeals Council's decision on June 5, 2002.

To meet the 2002 version of Listing 1.03, plaintiff must show he (1) has had reconstructive surgery or surgical arthrodesis of a major weight-bearing joint, (2) with *inability to ambulate effectively*, (3) and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.  The *inability to ambulate effectively* on a sustained basis can be for any reason, including pain associated with the underlying impairment, but the inability to ambulate effectively must have lasted, or be expected to last, for at least twelve (12) months.  Section 1.00(B)(2)(a). Section 1.00(B)(2)(b)(1) defines the *inability to ambulate effectively* as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

---

[13]At the time of the ALJ's decision on December 20, 2000, Listing 1.03 read:

> *Arthritis of a major weigh-bearing joint (due to any cause):*
>
> With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination.  With:
>
> A.  . . .
>
> B.  Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

Subsection (2) further explains that to ambulate effectively:

> [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment. . . .  Therefore, *examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail*.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

(emphasis added).  As plaintiff notes, the concept of "effective ambulation" was not in the relevant listings at the time of the hearing before the ALJ or when the ALJ's decision was made in this case.

Here, plaintiff specifically complains that although he testified he could walk for "two or three blocks," he was not specifically asked as to whether his condition fell into the examples of ineffective ambulation set forth in the above provision, *viz.*, whether he could walk on "rough or uneven surfaces," could "carry out routine ambulatory activities," could "use standard public transportation," or could "climb a few steps at a reasonable pace with the use of a single hand rail." Again, this explanatory language was added by the February 19, 2002 amendments, over a year after the hearing before the ALJ was conducted.  Plaintiff concludes, however, that without such questions, there is not adequate evidence to support the Appeals Council's conclusion, and its denial of review of the ALJ's decision, that plaintiff does not meet the listing and its necessary conclusion, albeit unstated conclusion, that plaintiff can "ambulate effectively."

Defendant acknowledges that Listing 1.03 changed between the time of the ALJ's decision and the Appeals Council's decision so as to include an ambulation component.  Defendant argues, however, that the Appeals Council considered plaintiff's impairments under the new wording of the listing which was effective at the time of their decision, yet determined plaintiff was still not

entitled to relief.  Defendant maintains plaintiff cannot show the Appeals Council's decision was in error.

Defendant acknowledges plaintiff has degenerative joint disease of his right knee, but contends plaintiff cannot, and did not, satisfy a listing because the evidence does not show plaintiff cannot ambulate effectively within the intent of the regulations.  Defendant notes plaintiff did not seek treatment for his leg until <u>after</u> he applied for disability benefits on August 6, 1999, noting the absence of medical reports from 1993 to 1998 for his knee condition.  Defendant cites the Court to medical records reflecting that in 1999, plaintiff's gait was adequate, he was not using a cane, did not have focal weakness, and had normal deep tendon reflex.  Defendant also cites the Court to medical records from 2000 reflecting that although plaintiff has right knee dysfunction and was dependent on a cane, was still able to ambulate effectively.  Defendant argues plaintiff's testimony further supports his ability to ambulate effectively.

The relevant time period here at issue is June 1, 1995, plaintiff's alleged onset date, through June 5, 2002, the date the ALJ's decision became the final decision of the Commissioner.  The new version of Listing 1.03 was in effect at the time of the Commissioner's final decision and, thus, the new version was applicable to this case.  *See* 66 Fed. Reg. 58010 (Nov. 19, 2001).[14]  The Appeals Council purportedly applied the new version of the listing to plaintiff's claim for benefits as it was pending administrative review, but determined plaintiff did not meet the new listing with its ambulatory component.  *See id.*

Although plaintiff has presented an effective argument as to what he might have been able

---

[14]"As is our usual practice when we make changes to our regulations, we will apply these final rules to the claims of applicants for benefits that are pending at any stage of our administrative review process, including those claims that are pending administrative review after remand from a Federal court. With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."

to show with respect to his ability to ambulate, the medical reports for the period at issue did not

reflect that plaintiff was not able *to ambulate effectively*, defined as an extreme limitation of the

ability to walk by the regulations set forth above, nor did such reports meet the criteria of the stated

examples of ineffective ambulation.  There are no such statements or objective findings in the

medical reports of record or in plaintiff's testimony to support such a functional limitation.

Although the records clearly demonstrated plaintiff would need the assistance of a cane to permit

independent ambulation due to his insufficient lower extremity functioning of his right knee and

ankle, the records did not establish that plaintiff's use of the case limited the functioning of <u>both</u>

upper extremities.  Further, plaintiff testified he could walk 2-3 blocks, a sufficient distance to be

able to carry out activities of daily living.  The Court acknowledges the pace of walking was not

discussed but, at this stage of the sequential process, it was plaintiff's burden to establish, albeit to

the Appeals Council, that his impairments met or were equal to this new listing.  To meet the

listing, it will be sufficient if the plaintiff demonstrates, through medical evidence and credible

testimony, that he is unable to effectively ambulate as that term is defined in the regulation.  The

Appeals Council's finding that plaintiff's condition did not meet or medically equal a listed

impairment under Listing 1.03 is supported by substantial evidence and will not be overturned on

this review.

D.
<u>Consideration of Combined Effect of Impairments and
Ability to Maintain Employment</u>

In his fourth ground, plaintiff argues the ALJ failed to consider the combined effect of

plaintiff's "affective mood disorders," which he found were "severe," along with plaintiff's severe

musculoskeletal impairments.  Plaintiff contends this failure to consider the combined effect of

plaintiff's impairments is demonstrated by the ALJ's failure to find any limitations attributable to

plaintiff's mental impairment.  Plaintiff maintains this failure of the ALJ to analyze the combined effect of all of his impairments is a basis to vacate the decision and remand for such an analysis.

Plaintiff also argues the ALJ's decision should be reversed because it does not indicate any consideration of, or finding as to, whether plaintiff can *maintain* employment in the jobs cited by the VE.  Plaintiff contends his significant non-exertional limitations, *viz.,* emotional lability and significantly impaired memory for recent facts, prevent *maintenance* of employment, even if such limitations do not prevent plaintiff from initially doing the jobs in question.

As noted above, the ALJ's determination that plaintiff's affective mood disorders were severe and, thus, significantly limited plaintiff's ability to do basic work activities constituted a limitation on the RFC plaintiff could actually perform in a work setting.  The failure of the ALJ to include any functional limitations from plaintiff's depression in his RFC and in his hypothetical to the VE requires remand.  On remand, the combined effect of these impairments should be considered.

## V.
## RECOMMENDATION

THEREFORE, it is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner be REVERSED and REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

VI.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to

plaintiff's attorney of record and the Assistant United States Attorney by the most efficient means

available.

IT IS SO RECOMMENDED.

ENTERED this 13th day of September 2005.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation.  Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e).  Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).